IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>LAURA MARGARITA SERRANO SANTANA<br><br>Debtor | CASE NO. 23-00797 (MCF)<br>Chapter 13 |
| LAURA MARGARITA SERRANO SANTANA<br><br>Plaintiff<br><br>v.<br><br>HACIENDA SAN JOSE HOMEOWNERS ASSOCIATION<br><br>Defendants | ADV. NO. 23-00055 (ESL) |

OPINION AND ORDER

This case is before the court upon the Debtor/Plaintiff's *Motion for Summary Judgment* (the "*Motion for Summary Judgment*") (dkt. #35) and Hacienda San José Homeowners Association, Inc.'s ("HSJ" or "the Defendant") *Opposition to Plaintiff's Motion [for] Summary Judgment and Request for Summary Judgment* (the "*Opposition*") (dkt. #38).

For the reasons discussed below, the *Motion for Summary Judgment* (dkt. #35) and the *Opposition* (dkt. #38) are hereby DENIED.

FACTUAL AND PROCEDURAL BACKGROUND

I.    The Bankruptcy Case, Bankr. Case No. 23-00797

1.    On March 20, 2023, Laura Margarita Serrano Santana (the "Debtor/Plaintiff") filed a voluntary petition under Chapter 13 of the Bankruptcy Code (the "Bankruptcy Case") (Bankr. Case No. 23-00797, dkt. #1).

2.    On the same date, the Debtor/Plaintiff filed a Chapter 13 Plan (Bankr. Case No. 23-00797, dkt. #4). The Debtor/Plaintiff filed Amended Chapter 13 Plans on May 24, 2023, on September 21, 2023, and on September 25, 2023 (Bankr. Case No. 23-00797, dkt. #14, #21, #23).

-1-

3.      After various procedural events, the Bankruptcy Case was stayed, and the confirmation of the Amended Chapter 13 Plan (Bankr. Case No. 23-00797, dkt. #23) was held in abeyance, pending a decision on this Adversary Proceeding. See, Bankr. Case No. 23-00797, dkt. #44.

II.      The Adversary Proceeding, Adv. Proc. No. 23-00055

4.      On July 10, 2023, the Debtor/Plaintiff filed a *Complaint* (dkt. #1) (the "Adversary Proceeding") against HSJ and Preferred Home Services, Inc.[1] to determine the validity of a lien allegedly held by HSJ over the Debtor/Plaintiff's residential real property located at Hacienda San Jose Villa Caribe Development, 220 Campiña Street, Caguas, Puerto Rico (the "Property"). The *Complaint* includes two (2) claims: the first claim alleges that HSJ does not hold a perfected security interest over the Property because the judgment lien, *infra*, was not recorded in the Puerto Rico Property Registry (the "Property Registry") and, thus, HSJ's POC #5-1 must be classified as a general unsecured claim; while the second claim argues, in the alternative, that HSJ's POC #5-1 is unsecured because, pursuant to 11 U.S.C. § 506(a), the Property has no equity as it is encumbered by a first mortgage in favor of Banco Popular de Puerto Rico ("BPPR") for $265,298.03 and has an estimated market value of $240,000.00.

5.      HSJ filed an *Answer to Complaint* on August 9, 2023 (dkt. #9) arguing that because the Property is located at the Hacienda San Jose Development, it is governed by Deed No. 212 of Declaration of Covenants and Restrictions of Hacienda San Jose Development Villa Caribe of June 6, 2001 ("Deed No. 212"), and Deed No. 335 of Establishment of Master Association Declaration of Covenants and Restrictions of Hacienda San Jose Development of September 25, 2000 ("Deed No. 335"), which provide that if homeowners' association (or "HOA") assessments are not paid when due, such assessment shall "become [a] continuing lien on the property" (dkt. #9, p. 5, ¶ 1). HSJ further argues that because Deed No. 335 and Deed No. 212 were recorded in

---

[1] Co-Defendant Preferred Home Services Inc. filed a *Motion to Dismiss* on September 11, 2023 (dkt. ##13, 16), to which the Debtor/Plaintiff filed a response (dkt. #17). The *Motion to Dismiss* was granted on October 24, 2023 (dkt. #19; see also, dkt. #25). Thus, Preferred Home Services Inc. is no longer a party in this Adversary Proceeding.

the Property Registry, HSJ's claim for homeowners' association assessments owed is secured (id., p. 5, ¶ 1).

6.      On January 2, 2024, the Debtor/Plaintiff and HSJ filed a joint *Initial Scheduling Conference Report* which included their discovery plan and proposed deadlines for the management of the Adversary Proceeding. The agreed deadline for the filing of dispositive motions was April 9, 2024 (dkt. #27).

7.      After various procedural events, the Adversary Proceeding was reassigned to the undersigned Judge on January 10, 2024 (dkt. #30).

8.      The court scheduled a Pretrial Hearing for April 12, 2024, if no dispositive motion was filed before April 9, 2024 (dkt. #32).

9.      The Debtor/Plaintiff filed the *Motion for Summary Judgment* on April 4, 2024 (dkt. #35) with a statement of material uncontested facts referencing supporting documents and record citations, and conclusions of law supporting her position. HSJ filed the *Opposition* on April 11, 2024 (dkt. #38). The Debtor/Plaintiff did not file a reply.

10.     On April 8, 2024, the Debtor/Plaintiff filed a motion requesting continuance of the Pretrial Hearing scheduled for April 12, 2024, due to the filing of the *Motion for Summary Judgment* (dkt. #36). The court granted the Debtor/Plaintiff's request on April 9, 2024, and continued the Pretrial Hearing without a date pending a decision on the *Motion for Summary Judgment* and the *Opposition* (dkt. #37).

LEGAL ISSUE

The issue before this court is whether HSJ holds a perfected security interest and/or a valid lien over the Property which would entitle POC #5-1 to be classified as a secured claim under Section 506 of the Bankruptcy Code.

POSITION OF THE PARTIES

(A)     The Debtor/Plaintiff

In the *Motion for Summary Judgment*, the Debtor/Plaintiff requests that the court determine that HSJ's claim (POC #5-1) is unsecured. The Debtor/Plaintiff argues that Section 7

-3-

of Deed No. 335 provides that, upon default in payment of homeowners' association assessments, HSJ is entitled to bring an action against the owner personally obligated to pay the same or to foreclose on its lien over the Property by filing an action against the owner in the state court, obtaining a judgment, and recording such judicial lien against the owner's real and/or personal property (dkt. #35, p. 15, ¶ ¶ 58-59). As such, the alleged pre-petition homeowners' association assessments lien is not self-perfecting. The Debtor/Plaintiff also argues that HSJ's claims are governed by state law – specifically the Municipal Code of Puerto Rico, Act No. 107-2020 – which HSJ followed by filing the State Court Case, *infra*, and obtaining a default judgment against the Debtor/Plaintiff. However, HSJ failed to record the judicial lien against the Property or against any other personal property owned by the Debtor/Plaintiff (<u>see</u>, dkt. #35, pp. 15-16, ¶ ¶ 61-63; 65-68). Thus, the Debtor/Plaintiff contends that the Defendant has a fully unsecured claim against the Debtor/Plaintiff for non-payment of pre-petition HOA fees.

In the alternative, should the court determine that HSJ's claim is secured, the Debtor/Plaintiff states that a value must be established for HSJ's collateral under 11 U.S.C. § 506 to determine the secured portion (if any) of such claim (dkt. #35, p. 2, ¶ 2). No evidence of the collateral's purported value was filed therewith.

(B)     <u>The Defendant HSJ</u>

HSJ argues that Deed No. 335 and Deed No. 212 – which are recorded in the Property Registry – create a voluntary mortgage over the Property, as such term is defined in Article 57 of the Commonwealth's Property Registry Act ("Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico", in Spanish), Act No. 210-2015, P.R. LAWS ANN. tit. 30, § 6084. Thus, HSJ argues that POC #5-1 is secured.

The Defendant also argues that it did not need to register the judicial lien because the lien on its claim was already constituted when Deed No. 335 and Deed No. 212 were presented and recorded in the Property Registry.

HSJ avers that because Deed No. 335 and Deed No. 212 are recorded in the Property Registry, they constitute real rights opposable *erga omnes*, and contends that the Puerto Rico Municipal Code does not apply in this case as the Property is governed by the voluntary mortgage and the easements in equity and restrictive covenants created by Deed No. 335 and Deed No. 212.

<u>UNCONTESTED MATERIAL FACTS</u>

In this case, the Defendant failed to comply with Local Civil Rule 56(c), *infra*, by only affirming and/or denying *the entirety* of the Debtor/Plaintiff's *Motion for Summary Judgment* in an endnote to the *Opposition* without supporting its denials with a record citation.[2] The Defendant also did not provide a separate, short, and concise statement of material facts to support its own position. The court is not required to ferret through the record to find support for said blanket denials such as those found in the Defendant's endnote. As such, the court finds that the Defendant failed to controvert the Debtor/Plaintiff's proposed material uncontested facts. After reviewing the record and the Debtor/Plaintiff's *Statement of Material Uncontested Facts* (dkt. #35, pp. 4-8, ¶ ¶ 11-33), which are admitted as unopposed upon the Defendant's noncompliance with Local Civil Rule 56(c), the court finds that the following material facts are uncontested:

---

[2] The endnote, which accepts or denies all the paragraphs in the *Motion for Summary Judgment* (not only the *Statement of Material Uncontested Facts* (dkt. #35, ¶ ¶ 11-33) as required by Local Rule 56(c)), reads as follows:

> Plainttif's [sic] introductory paragraphs numbered 1 to 9 are a narrative of procedural events in the case, without any need to contravene it. **HSJ has no opposition to** material uncontested facts numbered 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 as to the listing only without accepting the alleged unsecured creditor status, 27, 28, 29, 30 without accepting the alleged unsecured creditor status, 31, 32, 34 to 41 being legal citations only, 49 only as to the obligation to pay post-petition fees, being current, 52, 53, 54, 55, 56, 57, 58, 60, 61, 66. **HSJ opposes** the alleged material uncontested facts numbered 10, 11, 33, 42, 51 due to the appearing the Defendant's legal theory stated in this motion, numbered 43, 44, 45, 46, 47, 48, and 49 for being cited out of context, number 50 as drafted, 59, 62 as drafted, 63 as drafted, 64 as drafted, 65 as drafted, 67 as drafted, 68, 69, 70 as drafted, 71 as drafted, 72, 73, 74, 75, 76 and 77. All the proposed uncontested material facts, denied as drafted, and denied, are based and reasoned on HSJ's legal proposed undisputed facts, legal theory, and arguments.

Dkt. #38, p. 13, endnote i (boldface ours).

1. On September 25, 2000, Levitt Homes Builders Corporation, through its president Rafael Angel Torrens Salvá, executed Deed No. 335. See, dkt. #35, p. 5, ¶ 18; *Deed No. 335*, dkt. #35, pp. 23-50.

2. Deed No. 335 was presented for recordation at entry 101 of volume 959 of the Property Registry, First Section of Caguas. See, dkt. #35, ¶ 18; *Deed No. 212*, dkt. #35, p. 53, ¶ Third (Charges, Liens and Encumbrances); dkt. #38, p. 13, endnote iii; and dkt. #38, p. 14.

3. On June 6, 2001, Levitt Homes Builders Corporation, through its president Rafael Angel Torrens Salvá, executed Deed No. 212. See, dkt. #35, ¶ 19; *Deed No. 212*, dkt. #35, pp. 51-64.

4. Deed No. 212 provides, among other things, that Villa Caribe is subject to the covenants, restrictions, easements, charges and liens imposed in Deed No. 335. See, *Deed No. 212*, dkt. #35, p. 53, ¶ Third (Charges, Liens and Encumbrances).

5. Deed No. 212 was presented for recordation at the Property Registry, First Section of Caguas. See, dkt. #35, ¶ 19; dkt. #38, p. 13, endnote iii; and dkt. #38, p. 16.

6. On November 30, 2001, the Debtor/Plaintiff and her ex-spouse Gilberto Martinez Gomez ("Martinez-Gomez") acquired the Property, which is located at Hacienda San Jose Villa Caribe Development 220 Campiña Street Caguas, Puerto Rico, through Deed No. 511, before Notary Public Estela I. Valles Acosta. See, dkt. #35, p. 5, ¶ 12; *Certification of Real Estate Property for Property No. 55,501 dated July 21, 2023*, dkt. #35, p. 20.[3]

7. The Property is identified as Property No. 55,501 in the Caguas District of the Property Registry. See, *Certification of Real Estate Property for Property No. 55,501 dated July 21, 2023*, dkt. #35, p. 20.

8. The Debtor/Plaintiff and Martinez-Gomez executed a promissory note in the amount of $234,938.00 in favor of Newco Mortgage Holding Corp. to acquire the Property. See,

---

[3] The court notes that the *Certification of Real Estate Property No. 55,501 dated July 21, 2023*, incorrectly states that Deed No. 511 was executed on November 30, 2021 instead of November 30, 2001. See, dkt. #35, p. 20.

dkt. #35, p. 5, ¶ 16; and *Certification of Real Estate Property for Property No. 55,501 dated July 21, 2023*, dkt. #35, p. 21.

9. On March 1, 2013, the Debtor/Plaintiff and Martinez-Gomez executed Deed No. 4 before notary public Raymond M. Perez Brayfield, designating the Property as their homestead under Puerto Rico Law, which is the fourth recordation at the Property Registry for Property No. 55,501. See, dkt. #35, ¶ 20; *Certification of Real Estate Property for Property No. 55,501 dated July 21, 2023*, dkt. #35, p. 21.

10. On November 25, 2019,[4] HSJ filed a civil case for collection of monies with the Caguas Superior Court of First Instance (the "State Court") against the Debtor/Plaintiff, Martinez-Gomez, and their conjugal partnership, Case No. CG2019CV04391, stylized <u>Hacienda San Jose Homeowner Association, Inc. v. Gilberto Martinez Gomez, Laura Margarita Serrano Santana, and their Conjugal Partnership</u> (the "State Court Case"). <u>See</u>, dkt. #35, ¶ 23; *Default Judgment*, dkt. #35, p. 65.

11. On July 6, 2020, the State Court entered a *Default Judgment* against the Debtor/Plaintiff and Martinez-Gomez in the State Court Case, and ordered them to pay HSJ: (1) $18,888.38 until May 12, 2020; (2) other monthly payments that become due after June 1, 2020 at the rate of $155.00 per month or such other amount as may be established from time to time by HSJ; (3) the applicable late payments and/or interest and/or penalties; (4) $220.00 for costs and expenses; (5) legal interest at 4.25% from the date of the notification of the judgment; (6) $5,257.98 for attorneys' fees; and (7) $450.00 for attachment costs if necessary to request the execution of the judgment. <u>See</u>, dkt. #35, ¶ 24; *Default Judgment*, dkt. #35, p. 65.

12. On March 20, 2023, the Debtor/Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. 1301 *et seq*. <u>See</u>, dkt. #35, ¶ 25; Bankr. Case No. 23-00797, dkt. #1.

---

[4] The court notes that the *Default Judgment* incorrectly states that the State Court Case was filed on November 25, 2020, instead of November 25, 2019.

13. The Property Registry does not reflect that the Property is encumbered by a judgment lien or that the *Default Judgment* issued in the State Court Case was presented for recordation prior to the filing of the Bankruptcy Case. See, dkt. #35, ¶ 33; *Certification of Real Estate Property for Property No. 55,501 dated July 21, 2023*, dkt. #35, p. 20.

14. In *Schedule D: Creditors Who Have Claims Secured by Property*, the Debtor/Plaintiff identified HSJ as having a claim in the amount of $5,108.80 secured by the Property and without providing any additional information as to the nature of such claim. See, Bankr. Case No. 23-00797, dkt. #1, p. 25.

15. The Debtor/Plaintiff also identified HSJ as having an unsecured claim in the amount of $24,816.00 related to the State Court Case in *Schedule E/F: Creditors Who Have Unsecured Claims*. See, Bankr. Case No. 23-00797, dkt. #1, p. 29.

16. On April 11, 2023, BPPR filed POC #4-1 in the amount of $265,298.03 secured by a first mortgage over the Property. See, dkt. #35, ¶ 22; Bankr. Case No. 23-00797, POC #4-1. The Debtor has not objected to POC #4-1, which is deemed allowed under 11 U.S.C. § 502(a).

17. On May 3, 2023, the Defendant filed POC #5-1 in the amount of $42,364.48 secured by "Registration of Master Deed as a lien over [the Property]". See, dkt. #35, ¶ 27; Bankr. Case No. 23-00797, POC #5-1.

18. The Defendant listed the basis of POC #5-1 as "Homeowners Association Secured Maintenance Arrears Per Deed". See, Bankr. Case No. 23-00797, POC #5-1.

APPLICABLE LAW AND ANALYSIS

(A)     Summary Judgment Standard under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also, Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court … is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See also, Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008), quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996). See also, Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See, Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, 650 B.R. 334, 353 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See, Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to

summary judgment. See, Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991); Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. See, Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990). The moving party cannot prevail if any essential element of its claim or defense requires trial. See, López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See, Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988). To this effect, Local Civil Rule 56(b) requires a party requesting summary judgment to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See, L. Civ. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Civ. R. 56(e). Further, "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted". Id.

In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See, Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, at 464, *cert. denied*, 425 U.S. 904 (1976). A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding

for the nonmoving party. See, Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

To this end, Local Civil Rule 56(c) provides that:

[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

L. Civ. R. 56(c).

Unless the non-moving party controverts the moving party's statement of uncontested material facts, all the material facts set forth therein shall be deemed to be admitted. See, Cosme-Rosado v. Rosado-Figueroa, 360 F.3d 42 (1st Cir. 2004). This is the so-called "anti-ferret rule." See, e.g., Orbi, S.A. v. Calvesbert & Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1998).

When both parties seek summary judgment, as is the case here, the court:

must evaluate each motion independently, drawing all inferences against each movant in turn. AJC Int'l, Inc. v. Triple–S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera–Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins., 603 F.3d at 133) (internal quotation marks omitted).

-11-

Laboy-Salicrup v. Puerto Rico Electric Power Authority, 244 F.Supp. 3d 266, 270 (D.P.R. 2017). See also, In re Furlong, 620 B.R. 422, 425 (Bankr. D.N.H. 2020), *aff'd sub nom*, 2021 WL 4452320, 2021 U.S. Dist. LEXIS 186633 (D.N.H. 2021).

(B)     Claims Allowance Process

Sections 501 and 502 of the Bankruptcy Code govern the filing and allowance of claims in bankruptcy proceedings. See 11 U.S.C. §§ 501, 502. Section 501(a) provides that: "[a] creditor or an indenture trustee may file a proof of claim". 11 U.S.C. § 501(a). Section 502(a) provides that a proof of claim filed under Section 501 "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a).

The Bankruptcy Code itself does not prescribe what documentation, if any, must accompany a proof of claim. Instead, the Federal Rules of Bankruptcy Procedure provide the procedural framework for the filing and allowance of claims, regulate the form, content, and attachments for proofs of claim. On that vein, Fed. R. Bank. P. 3001(a) requires that a proof of claim be a written statement that conforms substantially with "the appropriate Official Form", Official Form 410, and Fed. R. Bank. P. 3001(c) directs creditors filing a proof of claim "based on a writing" to attach either the original or a duplicate of such writing. Official Form 410 further instructs the claimant to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." Official Form 410, p. 1. It further requires the claimant to specify whether the claim includes any "interest or other charges" in addition to the principal amount of the claim and, if so, to attach an "itemizing interest, fees, expenses, or other charges." Id., p. 2.

Fed. R. Bank. P. 3001(f) sets the evidentiary effect of a properly filed proof of claim (i.e., one that complies with the requirements of the rule and form), and states that a proof of claim submitted in accordance therewith "shall constitute *prima facie* evidence of the validity and amount" of such claim. Fed. R. Bankr. P. 3001(f). See also Juniper Dev. Grp. v. Kahn (In re

Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.1993); In re Plourde, 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009).

To rebut the *prima facie* evidence presumption of a properly filed claim, the objecting party must adduce "substantial evidence" in opposition to it. See *e.g.*, In re Plourde, 418 B.R. at 504 (citations omitted). If the objecting party produces "substantial evidence" in opposition and, consequently, rebuts the *prima facie* evidence presumption, the burden shifts to the claimant to establish the validity of its claim by a preponderance of the evidence. See id. ("If the objection is substantial, the claimant is required to come forward with evidence to support its claims ... and bears the burden of proving its claims by a preponderance of the evidence.") (internal citations and quotations omitted). Also see OneUnited Bank v. Charles St. Afr. Methodist Episcopal Church of Bos., 501 B.R. 1, 10 (D. Mass. 2013) ("If an objection to the claim is filed, the objecting party must adduce 'substantial evidence' to rebut the presumption in favor of the properly filed claim, at which time the ultimate burden of persuasion rests with the party asserting the claim."). Thus, the "[r]esolution of an objection to a proof of claim in bankruptcy follows a burden-shifting framework." OneUnited Bank v. Charles St. Afr. Methodist Episcopal Church of Bos., 501 B.R. 1, 10 (D. Mass. 2013).

(C)     Secured Claims and Judicial/Judgment Liens

Section 506 of the Bankruptcy Code prescribes the rules governing the determination and treatment of secured claims in bankruptcy cases. 4 Collier on Bankruptcy ¶ 506.01 (16th ed., 2024). In its relevant part, Section 506 provides that:

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

"[T]here are two types of secured claims: (1) voluntary (or consensual) secured claims, each created by agreement between the debtor and the creditor […], and (2) involuntary secured claims, such as a judicial or statutory lien … which are fixed by operation of law and do not require the consent of the debtor." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989) (citations omitted). As a threshold matter, a claim cannot be a "secured claim" for purposes of Section 506(a) unless it is secured by a "lien" on some specific item of property in which the estate has an interest, or, alternatively, is a claim that is subject to a right of setoff. See, 4 Collier on Bankruptcy ¶ 506.03 (16th ed., 2024). The term "lien" as used in section 506(a) is defined broadly in Section 101 to mean any "charge against or interest in property to secure payment of a debt or performance of an obligation." Id., quoting 11 U.S.C. § 101(37).

"The [Bankruptcy] Code classifies liens into three (3) categories: judicial liens, statutory liens, and security interests". In re Vargas Moya, 601 B.R. 845, 854 (Bankr. D.P.R. 2019). "A statutory lien is defined as 'a lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.'" Id., quoting 11 U.S.C. § 101(53). "On the other hand, the [Bankruptcy] Code defines a security interest as a 'lien created by an agreement'." Id., quoting 11 U.S.C. § 101(51). Lastly, a judicial lien (also known as a judgment lien) is defined by the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding". 11 U.S.C. § 101(36). "The [Bankruptcy] Code thus contemplates that liens created consensually (such as mortgage liens or UCC security interests) or by judicial action (such as judgment liens, attachments, equitable liens or levies) are not 'statutory liens', while liens that come into being as a result of statutory operation, without consent or judicial action, are 'statutory liens'." Id., quoting Klein v. Civale & Trovato (In re Lionel Corp.), 29 F.3d 88, 94, (2d Cir.1994).

Although "statutory liens most commonly arise only if a contract exists between the debtor and the lien claimant... [i]n distinguishing between the two, the focus is on the presence of a

contract provision granting a property interest to the claimant and on the extent to which that contract provision is a necessary condition precedent for the existence of the lien. If such contractual grant is a necessary precondition, the lien is not a statutory lien even though state statutes define the scope and quality of the property interest in detailed terms." Id., at 855, quoting Alliance Capital Management L.P. v. County of Orange (In re County of Orange), 189 B.R. 499, 502 (C.D. Cal. 1995), citing Seel v. Topeka Lumber Co. (In re Seel), 22 Bankr. 692, 695 (Bankr. D. Kan. 1982).

In Puerto Rico, "[a] judgment lien can only be obtained by complying with the requirements of the statute by which they are created". In re San Juan Const. Co., Inc., 14 B.R. 576, 580 (Bankr. D.P.R. 1981). Generally, a judgment lien becomes a valid lien over the immovable property of the debtor once the judgment is presented, recorded, and indexed according to law in the Property Registry. See, In re Cruz, 2012 WL 2603412, at *4 (Bankr. D.P.R. 2012). Once a judgment is presented, recorded, and indexed according to law, the same operates immediately as a lien upon the immovable property of the defendant, not exempt from execution. See, In re San Juan Const. Co., Inc., 14 B.R. at 580.

(D)     Discussion

The controversy under the court's consideration is whether HSJ holds a perfected security and/or a valid lien which would entitle its POC #5-1 to be classified as a secured claim. To make this finding, the court must first determine the nature of HSJ's claim and whether it has a perfected lien over the Property.

Notably, the Debtor/Plaintiff disclosed HSJ's claim in *Schedule E/F* as an unsecured claim in the amount of $24,816.00 arising from the State Court Case (see, *Uncontested Material Fact No. 15*; Bankr. Case No. 23-00797, dkt. #1, p. 29). Meanwhile, the Defendant filed POC #5-1 in the amount of $42,364.48 arising from "Homeowners Association Secured Maintenance Arrears" secured by the "Registration of Master Deed as a lien over [the Property]" (see, *Uncontested Material Fact Nos. 17 and 18*; Bankr. Case No. 23-00797, POC #5-1). Although the Defendant does not mention the State Court Case in POC #5-1, it included certain documents related thereto,

such as the *Default Judgment* issued by the State Court.[5] It is an uncontested fact that HSJ filed the State Court Case for collection of monies on November 25, 2019 (see, *Uncontested Material Fact No. 10*), which resulted in the *Default Judgment* against the Debtor/Plaintiff and Martinez-Gomez and in favor of HSJ on account of accrued and unpaid HOA assessments (see, *Uncontested Material Fact No. 11*). It is also uncontested that the Property Registry does not reflect that the Property is encumbered by a judgment lien or that the *Default Judgment* was presented for recordation prior to the filing of the Bankruptcy Case (see, *Uncontested Material Fact No. 13*).

As discussed above, a judgment lien can only be obtained and become a valid lien over the immovable property of a debtor once the judgment is presented, recorded, and indexed according to the statute by which it is created. See *e.g.*, In re Cruz, 2012 WL 2603412, at *4. In this case, because HSJ did not present or record the *Default Judgment* issued in its favor in the State Court Case in the Property Registry, the court finds that HSJ does not have a valid or perfected judgment lien over the Property.

Having determined that HSJ does not have a valid or perfected judgment lien over the Property, the court turns its attention to whether HSJ has a lien over the Property for the payment of HOA assessments by virtue of Deed No. 335 and Deed No. 212 as HSJ alleges in the *Opposition*. In the *Motion for Summary Judgment*, the Debtor/Plaintiff recognizes that, pursuant to Deed No. 335, she is required to pay HOA assessments but argues that Deed No. 335 and Deed No. 212 do not create a self-perfecting lien for non-payment of HOA assessments. The Debtor/Plaintiff argues that the Defendant must follow the procedures established in Section 7 of Article V of Deed No.

---

[5] The documents submitted by Defendant in support of POC #5-1 related to the State Court Case are in the Spanish language and the Defendant did not provide the required English translations thereof. "It is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English", in accordance with 48 U.S.C. § 864. Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004). See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) (holding that documents not in the English language should not be considered). Thus, the court will only consider the *Default Judgment* which translation was filed at dkt. #35, p. 65.

-16-

335 and state law to obtain a valid lien over the Property for the arrearage of HOA assessments. In response, the Defendant argues that HOA assessments are a "voluntary mortgage" perfected by the recordation of Deed No. 335 and Deed No. 212 in the Property Registry under Articles 57-59 of the Commonwealth's Property Registry Act, P.R. LAWS ANN. tit. 30, § 6084-6086. They also argue that pursuant to Deed No. 335, if any HOA assessments are not paid such assessments constitute a continuing lien over the Property.

Until December 8, 2015, the Commonwealth's Mortgage and Property Registry Act of 1979, P.R. LAWS ANN. tit. 30, §§ 2001 *et seq.*, and portions of the Commonwealth's Civil Code of 1930, P.R. LAWS ANN. tit. 31, §§ 5001 *et seq.*, governed the "nature and effect of mortgages" in Puerto Rico. Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 118 (1st Cir. 2011). On December 8, 2015, Puerto Rico's legislature passed the Commonwealth's Property Registry Act of 2015 that is cited by HSJ and which replaced or repealed the Commonwealth's Mortgage and Property Registry Act of 1979. See, P.R. LAWS ANN. tit. 30, §§ 6001 *et seq.* The court underscores that Deed No. 335 and Deed No. 212 at issue in this case were executed in 2001 (see, *Uncontested Material Fact Nos. 1 and 3*) and are therefore governed by the Commonwealth's Mortgage and Property Registry Act of 1979 and not the Commonwealth's Property Registry Act of 2015. See e.g., Rivera Mercado v. Banco Popular de Puerto Rico, 599 B.R. 406, 418 n. 6 (B.A.P. 1st Cir. 2019) ("[o]n December 8, 2015, Puerto Rico's legislature passed Act 210-2015, known as the Commonwealth's Property Registry Act. See P.R. Laws Ann. tit. 30, §§ 6001, et seq. (2015). The Mortgage at issue in this case, however, was executed in 2014 and therefore is governed by the Mortgage and Property Registry Act of 1979."); see also, In re Rodriguez, 2024 WL 4630092, at *7 n.3 (Bankr. D.P.R. 2024) (recognizing that a mortgage executed in 2014 is governed by the Commonwealth's Mortgage and Property Registry Act of 1979); In re Estrada, 2023 WL 8853648, at *2 (Bankr. D.P.R. 2023) (finding that a mortgage executed in 2013 is governed by the Commonwealth's Mortgage and Property Registry Act of 1979); (Bautista Cayman Asset Co. v. J.A.M.A. Development Corporation, 322 F.Supp.3d 266, 271 n.2 (D.P.R. 2018) (recognizing that mortgage executed prior to the enactment of Act No. 210 was governed by the

Commonwealth's Mortgage and Property Registry Act of 1979); (<u>Bautista Cayman Asset Co. v. Estate of Maldonado-Morales</u>, 2017 WL 3534994, at *5 n.2 (D.P.R. 2017) (recognizing that a mortgage executed in 2011 was governed by the Commonwealth's Mortgage and Property Registry Act of 1979). As such, this court will not address or consider arguments predicated on the Commonwealth's Property Registry Act of 2015 or the purported "voluntary mortgage" arising thereunder.

We now turn our attention to the relevant provisions of Deed No. 335 and Deed No. 212. As previously stated, the Property is located at Villa Caribe in Caguas, Puerto Rico and is encumbered by certain covenants and restrictions established in Deed No. 212, as well as the covenants, restrictions, easements, charges and liens imposed by Deed No. 335. <u>See</u>, *Uncontested Material Fact Nos. 4 and 6*. Deed No. 335 and Deed No. 212 were presented and are recorded in the Property Registry. <u>See</u>, *Uncontested Material Fact Nos. 2 and 5*.

Both the Defendant and the Debtor/Plaintiff base their arguments on Section 7 of Article V of Deed No. 335, which provides that:

> **If any assessments are not paid on the date when due (being the dates specified in Section 5, hereof), then such assessment shall become delinquent and shall, together with such interest thereon and cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the property which shall bind such property in the hands of the then Owner, his heirs, devisees, personal representatives and assigns.** The personal obligation of the then Owner to pay such assessment, however, shall remain his personal obligation for the statutory period and shall not pass to his successors in title unless expressly assumed by them.
>
> If the assessment is received by the Association after the first fifteen days of any given month ("the delinquency date"), the assessment shall bear a three (3%) percent penalty of the amount of the assessment due. In addition, if the assessment is not paid within thirty (30) days after such delinquency date, the assessment shall bear interest from the date of delinquency at the rate of twelve percent (12%) per annum or the maximum rate of interest permitted by law, whichever is lower, and **the Association may bring an action at law against the Owner personally obligated to pay the same or to foreclose the lien against the property,** and there shall be added to the amount of such assessment the costs of preparing and filing the complaint in such

action, and in the event a judgment is obtained, such judgment shall include interest on the assessment as above provided and a reasonable amount for attorneys' fees to be fixed by the court together with the costs of the action. If any assessment, or installment thereof, shall not be paid within thirty (30) days after the due date, the Association may, at any time thereafter, accelerate the entire amount due for the balance of the calendar year for which the assessment was made and declare the same immediately due and payable. The Association may also suspend or cancel membership rights: such as the use of the General Common Properties, the privilege to enter Hacienda San José Development through the automatic gate entrance and member's personalized gate entrance device.

Dkt. #35, pp. 39-40 (boldface ours).

Other relevant provisions of Deed No. 335 include Section 1 of Article V, which provides that "[t]he annual and special assessments […] shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made" and "shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due" (dkt. #35, p. 36). And Section 8 of Article V of Deed No. 335, which provides that "[t]he lien of the assessments provided for herein shall be subordinate to the lien of any institutional mortgage or mortgages now or hereafter placed upon the properties subject to assessment; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to a sale or transfer of such property pursuant to a decree of foreclosure, or any other proceeding in lieu of foreclosure" (dkt. #35, p. 40).

In Puerto Rico, equitable easements are of jurisprudential origin. The Puerto Rico Supreme Court has defined equitable easements (or equitable servitudes per the official translation) as "restrictive covenants 'for the benefit of present and future acquirers', which impose special charges or liens as part of a general plan of improvements for the development of a residential urbanization on that property". Colón Padilla v. San Patricio Corporation, 81 D.P.R. 242, 250, 1959 PR Sup. LEXIS 58 (1959) (Official Translation). For restrictive covenants to be valid, they must be reasonable, follow a general plan of improvements, be expressly stated in the title, and be registered (recorded) in the Property Registry. See, Carrillo Norat v. Camejo, 7 P.R. Offic. Trans. 144, 147 (1978). Once equitable easements are recorded in the Property Registry, they operate as

rights enforceable *erga omnes* and limit the powers of future purchasers. Thus, knowledge of the restrictive conditions of an equitable easement is imputed to any person who acquires property subject to them only after their recordation.

One of the peculiarities of equitable easements is that they are contracts; the restrictions and rights agreed upon therein bind the parties that are subject thereto. See, Sands v. Extensión Sagrado Corazón Inc., 3 P.R. Offic. Trans. 1155 (1975). Equitable easements are contractual obligation of a real nature once they are recorded in the Property Registry and enforceable *erga omnes*. See, *e.g.*, Residentes Parkville v. Díaz, 159 D.P.R. 374, 382–383 (2003) (no English translation available). The forgoing implies that they are enforceable against third parties as long as they comply with the requirements established by law.

The Debtor/Plaintiff is thus bound by the equitable easements and other restrictions of Deed No. 335 and Deed No. 212, effectiveness and validity of which is undisputed. There is, however, a difference in the interpretations of the provisions of Deed No. 335 by the Debtor/Plaintiff and the Defendant, and the applicable law. "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation[.]' " Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995), quoting Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir. 1987) and Heirs of Ramirez v. Superior Court, 81 P.R.R. 347, 351 (1959). See also, Vulcan Tools of Puerto Rico v. Makita USA, Inc., 23 F.3d 564, 567 (1st Cir.1994) (under Puerto Rico law, "[w]hen an agreement leaves no doubt as to the intent of the parties, a court should not look beyond the literal terms of the contract.").

In the instant case, there is no question that the Debtor/Plaintiff is obligated to make payments of HOA assessments to HSJ pursuant to Deed No. 335. Furthermore, Section 7 of Article V of Deed No. 335 is clear and unambiguous when it provides that "[i]f any assessments are not paid … when due … such assessment shall … together with such interest thereon and cost of collection thereof … become a continuing lien on the [P]roperty …" (dkt. #35, p. 39). Section 7

of Article V of Deed No. 335 also provides that HSJ may bring an action at law "to foreclose the lien against the [P]roperty" if the assessments are not paid (dkt. #35, p. 40).

Taking into consideration the clear language in Deed No. 335, this court finds that HSJ may have a valid lien over the Property, the extent of which is unclear. The court notes that there may be additional statutes and case law that could further clarify this matter. However, several cases cited in the *Opposition* are only available in the Spanish language and the parties have not provided English translations thereof. The court further underscores that the relevant provisions of (i) the Commonwealth's Property Registry Act of 2015 cited by HSJ in the *Opposition* and/or (ii) the Municipal Code of Puerto Rico, Act No. 107 of August 13, 2020 (which repealed the Controlled Access Law, Act. No. 21 of May 20, 1987), cited by the Debtor/Plaintiff in the *Motion for Summary Judgment*, are also only available in the Spanish language and the parties have not provide English translations thereof with the exception of a limited number of supposed relevant statutes. This court may not consider documents in the Spanish language under 48 U.S.C. § 864, L. Civ. R. 5(c), and P.R. LBR 9070-1(c), and will not address arguments not properly raised or briefed by the parties.

Lastly, the Debtor/Plaintiff included in the *Motion for Summary Judgment* an allegation to the effect that should the court find that the Defendant has a valid lien and POC #5-1 is a secured claim, "a 'value' for the Defendant's collateral must be established under Section 506 of the Code in order to determine the secured portion, if any, of the Defendant's Claim". Dkt. #35, ¶ 2. However, neither the Debtor/Plaintiff nor the Defendant briefed this matter or submitted facts or documents to aid the court in making such a determination. Again, this court will not address arguments not properly raised or briefed by the parties.

CONCLUSION

The Debtor/Plaintiff and the Defendant have failed to establish that there are no genuine issues of material fact. Summary judgment is thus not appropriate under Fed. R. Civ. P. 56(a) and Fed. R. Bankr. P. 7056. In view of the forging, the Debtor/Plaintiff's *Motion for Summary Judgment* (dkt. #35) and the Defendant's *Opposition* (dkt. #38) are hereby DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of December 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge